This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-36418**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**LAFAYETTE STONE,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Benjamin Chavez, District Judge**

Hector H. Balderas, Attorney General
Marko D. Hananel, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
MJ Edge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}** Defendant Lafayette Stone appeals from his convictions, following a jury trial, of one count of aggravated burglary (commits battery), contrary to NMSA 1978, Section 30-16-4(C) (1963); one count of unlawful taking of a motor vehicle, contrary to NMSA 1978, Section 30-16D-1(A)(1) (2009); and two counts of possession of a controlled substance (felony-narcotic drug), contrary to NMSA 1978, Section 30-31-23(E) (2011,

as amended 2019).[1] Defendant argues that: (1) the charge of aggravated burglary should have been dismissed pursuant to the general/specific statute rule, or in the alternative, his convictions for aggravated burglary and unlawful taking of a motor vehicle violate double jeopardy; and (2) the district court erred in admitting the results of the drug field test. Accepting the State's concession on Defendant's second argument, we reverse Defendant's two convictions for possession of a controlled substance and remand for a new trial on those counts. We affirm Defendant's other convictions.

**BACKGROUND**

{2}     On January 16, 2016, Victim parked the vehicle she was driving in a handicapped parking space in front of a Walgreens, in Albuquerque, New Mexico. Victim's friend and roommate (Passenger), waited in the passenger seat of the vehicle while Victim went inside. Victim left the vehicle running and the heater on because it was cold outside. As she entered the store, Victim was told by another person that Defendant was getting into her vehicle. Victim then left the store and saw Defendant in the driver's seat of the vehicle. Victim rushed back to the vehicle, opened the driver's door, and attempted to pull Defendant out. Inside the vehicle, Passenger struggled with Defendant as she tried to take the keys away and keep the vehicle in park. Despite their attempts to regain control of the vehicle, Defendant was able to drive the vehicle in reverse with the driver-side door open. The open door pushed Victim to the ground as the vehicle reversed. After Victim was on the ground, the open door pushed her along the ground for several feet as the vehicle continued in reverse. Shortly thereafter, an employee of Walgreens and a customer were able to remove Defendant from the driver's seat. A Walgreens surveillance camera recorded the incident.

{3}     While Defendant was in custody in the back of a responding officer's patrol car, an officer noticed that Defendant was moving around a lot. After the officer asked Defendant what he was doing, Defendant told the officer that he was "taking the drugs out of his butt." Defendant was removed from the patrol car, and the officer located a tiny clear plastic bag with a hard, rock-like or crystal-like substance on the back seat of the patrol car. When the officer asked Defendant if he had any other drugs on him, Defendant advised the officer that he "might have some in [his] anus." The officer pulled back Defendant's pants and underwear and located a very small substance wrapped in a napkin. Both substances were field tested—the first returning a presumptive positive for methamphetamine and the second returning a presumptive positive for black tar heroin. The two substances were never sent to the laboratory for further analysis.

{4}     Based on these events, Defendant was indicted by a grand jury of the following: one count of aggravated burglary (commits battery); one count of aggravated battery (deadly weapon or, in the alternative, great bodily harm); one count of unlawful taking of a motor vehicle; and two counts of possession of a controlled substance. Following a jury trial, Defendant was acquitted of the aggravated battery count. The jury convicted Defendant of all the other counts.

---

1All references to Section 30-31-23(E) in this opinion are to the 2011 version of the statute.

**DISCUSSION**

**I.    Defendant's Convictions for Aggravated Burglary and Unlawful Taking of a Motor Vehicle Do Not Violate Double Jeopardy and We Reject Defendant's General/Specific Statute Rule Argument**

**{5}**    Defendant argues that the district court erred in failing to dismiss his aggravated burglary charge, pursuant to the general/specific statute rule. Defendant's argument acknowledges our decision in *State v. Hernandez*, wherein we rejected the defendant's argument that he should have only been prosecuted for unlawful taking of a motor vehicle and not also burglary and possession of burglary tools pursuant to the general/specific statute rule. 1993-NMCA-132, ¶¶ 4-5, 116 N.M. 562, 865 P.2d 1206. However, Defendant asks that we overrule *Hernandez* in light of our New Mexico Supreme Court's decisions in *State v. Cleve*, 1999-NMSC-017, 127 N.M. 240, 980 P.2d 23, and *State v. Santillanes*, 2001-NMSC-018, 130 N.M. 464, 27 P.3d 456. Alternatively, Defendant argues that his conviction for both aggravated burglary and unlawful taking of a motor vehicle violated his right to be free from double jeopardy. For the reasons that follow, we reject both of Defendant's arguments.

**{6}**    The general/specific statute rule and the double jeopardy inquiry in the multiple punishment context are "cannon[s] of statutory construction with constitutional overtones." *Cleve*, 1999-NMSC-017, ¶ 25. "Both analyses focus on legislative intent." *Id.* However, "while the double jeopardy inquiry focuses on whether the Legislature intended to limit a court's discretion in imposing multiple punishments, the general/specific statute rule determines whether the Legislature intended to limit the discretion of the prosecutor in its selection of charges." *Id.*

**{7}**    We begin our analyses of these related inquiries with an analysis of Defendant's double jeopardy argument. "A double jeopardy challenge is a constitutional question of law which we review de novo." *State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747. "The constitution protects against both successive prosecutions and multiple punishments for the same offense." *State v. Branch*, 2018-NMCA-031, ¶ 22, 417 P.3d 1141; *see* U.S. Const. amend. V; N.M. Const. art. II, § 15. Defendant raises a double-description argument because he was "charged with violations of multiple statutes that may or may not be deemed the same offense for double jeopardy purposes." *Swafford v. State*, 1991-NMSC-043, ¶ 9, 112 N.M. 3, 810 P.2d 1223. "Double-description claims are subject to the two-part test set forth in *Swafford*[.]" *Swick*, 2012-NMSC-018, ¶ 11. Under that test, we first consider "whether the conduct underlying the two convictions was unitary[.]" *Id.* "If it is not, then there is no double jeopardy violation." *Id.* "If it is unitary, we consider whether it was the Legislature's intent to punish the two crimes separately." *Id.* "Only if the first part of the test is answered in the affirmative, and the second in the negative, will the double jeopardy clause prohibit multiple punishment in the same trial." *State v. Silvas*, 2015-NMSC-006, ¶ 9, 343 P.3d 616 (internal quotation marks and citation omitted).

**{8}** In this instance, we assume without deciding that Defendant's conduct was unitary because he "cannot carry the burden imposed by the second prong of the *Swafford* test." *State v. Ramirez*, 2018-NMSC-003, ¶ 42, 409 P.3d 902; *see also State v. Bahney*, 2012-NMCA-039, ¶ 21, 274 P.3d 134 (stating that it is permissible to presume unitary conduct because "our case law separately makes it clear that analysis pursuant to either prong can be dispositive of a *Swafford*-governed double jeopardy challenge"). We therefore turn to the question of whether the Legislature intended to provide for multiple punishments in this circumstance. *See State v. Franco*, 2005-NMSC-013, ¶ 12, 137 N.M. 447, 112 P.3d 1104 ("The sole limitation on multiple punishments is legislative intent[.]" (alteration, internal quotation marks, and citation omitted)).

**{9}** "When, as here, the statutes themselves do not expressly provide for multiple punishments, we begin by applying the rule of statutory construction from *Blockburger v. United States*, 284 U.S. 299 . . . (1932), to determine whether each provision requires proof of a fact that the other does not." *Branch*, 2018-NMCA-031, ¶ 24. "If all elements of one statute are subsumed within the other, then the analysis ends and the statutes are considered the same for double jeopardy purposes." *State v. Gonzales*, 2019-NMCA-036, ¶ 22, 444 P.3d 1064 (internal quotation marks and citation omitted). "When dealing with statutes that are vague and unspecific or written with many alternatives, we apply a modified version of the *Blockburger* analysis." *Id.* (internal quotation marks and citation omitted). "Under the modified *Blockburger* analysis, we no longer apply a strict elements test in the abstract; rather, we look to the state's trial theory to identify the specific criminal cause of action for which the defendant was convicted, filling in the case-specific meaning of generic terms in the statute when necessary." *Id.* (internal quotation marks and citation omitted).

**{10}** We cannot characterize the statute governing Defendant's conviction for unlawful taking of a motor vehicle as vague, unspecific, or written with many alternatives. *See* Section 30-16D-1(A) ("Unlawful taking of a vehicle or motor vehicle consists of a person taking any vehicle or motor vehicle as defined by the Motor Vehicle Code intentionally and without consent of the owner."). Conversely, the statute governing Defendant's charge for aggravated burglary is written with many alternatives. *See* Section 30-16-4 ("Aggravated burglary consists of the unauthorized entry of any vehicle, watercraft, aircraft, dwelling or other structure, movable or immovable, with intent to commit any felony or theft therein and the person either: (A) is armed with a deadly weapon; (B) after entering, arms himself with a deadly weapon; (C) commits a battery upon any person while in such place, or in entering or leaving such place."). In order to identify the State's trial theory as to the aggravated burglary conviction, we may "examin[e] the charging documents and the jury instructions given in the case." *Swick*, 2012-NMSC-018, ¶ 21.

**{11}** The grand jury indictment made clear that Defendant was being charged with aggravated burglary under the "commits battery" aggravation and identified the specific subsection of the statute that was relevant to that aggravation. *See* Section 30-16-4(C). Likewise, the jury was instructed that it could convict Defendant of aggravated burglary

if it found that Defendant: (1) "entered a vehicle without authorization"; (2) "with the intent to commit a theft once inside"; and (3) "touched or applied force to [Victim] in a rude or angry manner while inside." *See* UJI 14-1632 NMRA. Having narrowed Defendant's aggravated burglary conviction to the State's trial theory, we next consider whether the elements of unlawful taking of a motor vehicle were subsumed within the elements of aggravated burglary elements pursuant to *Blockburger*.

**{12}** Defendant's conviction for unlawful taking of a motor vehicle required proof that Defendant took Victim's vehicle, which was not a necessary element of Defendant's aggravated burglary charge. Similarly, Defendant's aggravated burglary conviction required proof that Defendant committed a battery, which was not a necessary element of Defendant's unlawful taking of a motor vehicle charge. Therefore, we conclude that the elements of Defendant's conviction of unlawful taking of a motor vehicle are not subsumed within the elements of his conviction of aggravated burglary. *See Swick*, 2012-NMSC-018, ¶ 13 ("If each statute requires proof of a fact that the other does not, it may be inferred that the Legislature intended to authorize separate punishments under each statute.").

**{13}** Our conclusion that aggravated burglary did not subsume unlawful taking of a motor vehicle raises a rebuttable presumption that the Legislature intended multiple punishments that may be overcome by other indicia of legislative intent. *See Swafford*, 1991-NMSC-043, ¶ 31 (clarifying that "if the elements of the statutes are not subsumed one within the other, then the *Blockburger* test raises only a presumption that the statutes punish distinct offenses" that "is not conclusive and . . . may be overcome by other indicia of legislative intent"). Our Supreme Court has stated that "[s]tatutes directed toward protecting different social norms and achieving different policies can be viewed as separate and amenable to multiple punishments." *Swafford*, 1991-NMSC-043, ¶ 32. Here, the unlawful taking of a motor vehicle statute "primarily protects an owner's right to immediate possession of an automobile." *State v. McGruder*, 1997-NMSC-023, ¶ 30, 123 N.M. 302, 940 P.2d 150, *abrogated on other grounds by State v. Chavez*, 2009-NMSC-035, ¶¶ 2, 16, 47 n.1, 146 N.M. 434, 211 P.3d 891. This is different from the burglary statute, which has a purpose "to protect against the feeling of violation and vulnerability that occurs when a burglar invades one's personal space." *State v. Office of Pub. Def. ex rel. Muqqddin*, 2012-NMSC-029, ¶ 43, 285 P.3d 622. Having considered the other indicia of legislative intent, we conclude that Defendant has not rebutted the presumption that the Legislature intended multiple punishments.

**{14}** Because the Legislature intended to provide for separate punishments for Defendant's offenses, his convictions for both aggravated burglary and unlawful taking of a motor vehicle do not violate double jeopardy. Furthermore, based on the foregoing analysis and the following guidance from *Santillanes*, we also reject Defendant's general/specific statute rule argument:

> Both of these questions, whether the Legislature intended to create separately punishable offenses and whether the Legislature intended to circumscribe prosecutorial charging discretion, are answered under the

same framework. First, we assess whether each provision requires proof of an additional fact that the other does not in accordance with the test established in *Blockburger*[.] If the elements of the two crimes are the same, the general/specific statute rule applies, and the prosecution must charge the defendant under the special law absent a clear expression of legislative intent to the contrary. . . . If the elements differ, however, there is a presumption that the Legislature intended to create separately punishable offenses and, concomitantly, intended to leave prosecutorial charging discretion intact; further inquiry is then necessary to determine whether the presumption stands.

2001-NMSC-018, ¶ 16 (internal quotation marks and citations omitted).

## II.      We Reverse Defendant's Convictions for Possession of a Controlled Substance and Remand for a New Trial on Those Counts

**{15}**    Defendant argues and the State concedes that *State v. Morales*, 2002-NMCA-052, 132 N.M. 146, 45 P.3d 406, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110, requires us to reverse Defendant's convictions for felony possession of a controlled substance and remand for a new trial on those counts. While we are not bound by the State's concession, *State v. Tapia*, 2015-NMCA-048, ¶ 31, 347 P.3d 738, we accept the concession because we conclude that it is supported by our precedent. *See Morales*, 2002-NMCA-052, ¶ 23 (holding that "the [s]tate has the burden to establish the validity of the scientific principles on which the test is based and its scientific reliability when the [s]tate elects to rely on a field test to prove the identity of the contraband" and "that testimony by a law enforcement officer will not, without more, be sufficient to support admission of the results, when the officer cannot explain the scientific principles that the test uses, the percentage of false positives or negatives that the test will produce, or the factors that may produce those false results"). Therefore, we reverse Defendant's two convictions for felony possession of a controlled substance under Section 30-31-23(E) and remand for a new trial on the same.

## CONCLUSION

**{16}**    We affirm Defendant's convictions for aggravated burglary and unlawful taking of a motor vehicle. We reverse Defendant's convictions for two counts of felony possession of a controlled substance and remand for a new trial on those counts.

**{17}    IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**ZACHARY A. IVES, Judge**